# In re Gartner

*C. Brewster Rhoads*, for Committee of Censors.

*Francis M. McAdams* and *Otto Kraus, Jr.*, for respondent.

PER CURIAM, April 15, 1935.—This matter comes before the court en banc on a rule that issued out of this court directed to the respondent and requiring him to answer the charges set forth therein concerning unethical and unprofessional conduct.

In brief the rule was issued as a result of information laid before the judges by a special committee of the bar association appointed to investigate charges of alleged irregularities and unprofessional conduct under authority of the Act of June 12, 1931, P. L. 543.

The allegations against this respondent might be summarized as an agreement made with the principals, before the commission of a crime, to represent their subordinates in return for regular retainers paid by the so-called "higher-ups," in anticipation of contact with the law-enforcing agencies.

The respondent in this case is a member of the firm of Gartner and Lemisch, and had been a member of the firm of Gartner, Felger and Lemisch. He has been a member of the bar since February 1920, when he first entered the offices of Golder and Felger, where he remained until 1926, but received no monetary remuneration. In 1926 he severed his connection and practiced law under his own name until 1930.

At that time he resumed the partnership with Mr. Felger and Mr. Lemisch, which continued until Mr. Felger's death, and was then carried on by the surviving partners.

Mr. Gartner denied specifically and categorically that he had any relationship with the so-called higher-ups, or that he knew or had any reason to know of any financial arrangement between his office and those in charge of the so-called numbers racket. He stated he had never represented a case of this character, that he knew that his associates did represent such clients, but that he never had any reason to believe that Mr. Felger during his lifetime or any other partner or associate, had received fees or compensation in the manner complained about.

He discussed, both before the special committee and the court en banc, the method of conducting business in his law office, which could not be recommended as a model to be followed. The deceased partner was the keeper of the exchequer, according to both Mr. Gartner and the other surviving partner, Mr. Lemisch, and Mr. Felger not only held the purse strings, but dealt the

money out to his associates in whatever manner his judgment dictated so far as the distribution of the profits was concerned.

Mr. Gartner enjoyed a drawing account of $125 per week, and he stated on some occasions Mr. Felger would give him a check representing a share of the accumulated profits, some of which Mr. Felger had kept in his own safe deposit box.

There is little doubt from the testimony of all concerned that Mr. Felger, the deceased partner, handled the money during his lifetime. The respondent denied that he knew as a fact, or that he had heard as gossip, of the arrangement for general retainers paid by bankers and received by his firm in return for services rendered or to be subsequently rendered to subordinates who were law violators. He stated that if any such secret funds came to Mr. Felger in the manner described, he would not necessarily know of it, because of the distribution of business in the office. By reason of his political activity and a prolonged illness in the spring of 1934 he explained when he appeared before the special committee that he was completely out of touch with the affairs of his own office, and that he took a great many things for granted as to their regularity because his principal concern was procuring business, not in trying cases. During the last illness of his deceased partner the matter of dollars and cents was of considerable concern to the partners, and on several occasions he had discussed the subject with the deceased Mr. Felger. He did not know whether funds had come in as a result of those conferences, but he did know that by reason of Mr. Felger's careful handling of the finances of the partnership during his lifetime money was usually on hand when needed.

This fact was corroborated by the clerk and bookkeeper employed in the offices, who was a half sister of Mr. Felger and who manipulated the funds so that finances were always on hand to meet fixed charges such as rent and telephone bills that came in regularly and had to be paid accordingly.

The fact that Mr. Felger was receiving money from higher-ups in the underworld in return for services rendered to subordinates, first came to the respondent's notice, he stated before the special committee, when told to him by the chairman of that commitee. Mr. Felger's practice of keeping money in his private safe deposit box and not keeping his associates advised of the amount contained therein, was a practice of long standing and not something introduced during the last months of his life.

Both before the committee, and before this court this respondent's testimony must be characterized as frank. He displayed an abundant ignorance of things going on about him in his own office, but he left the impression that he was virtually an outside man and that the details of office management was something in which he was not interested and with which he certainly was not familiar.

It may appear at first blush that no man of intelligence could exist in the midst of such things and be unacquainted with them, but the respondent's explanation of his reason for indifference to such details was a reasonable one and could be characterized as both believable and acceptable. A member of the bar to whom others entrust the management of their affairs, should be more circumspect in the management of his own affairs. Carelessness of this character is not a subject for discipline. Negligence might be actionable by a client. But this court is satisfied that Mr. Gartner was neither part nor parcel of any arrangement whereby fees or retainers were solicited or accepted by his law office in the manner objected to. If his part-

ners or associates were in league with the underworld, its leaders or their henchmen, to accept retainers to be interpreted as fees for defending law breakers for crimes to be committed in the future, there is no evidence that Mr. Gartner was conscious of it, or that he participated in it. Whether the revenue derived from his association with this firm was made up in part by such fees, if such fees were received, cannot be ascertained either from the testimony of the witnesses or the records of the firm.

Eager as this court is to rid the bar of all sources of pollution, we are bound by the evidence and we have no desire to punish the innocent. If Mr. Gartner innocently participated in the profits of such arrangements, it is the opinion of the court that he was thoroughly oblivious of it and would not willingly have been a party to it. He and his fellow members of the bar, however, when a party to such partnership arrangements, should scrutinize more carefully than he has done in the past, the sources of the firm's revenue, and even though having, as he has described in his testimony, the utmost confidence in his partners, for his own protection he should know what his partners are doing, where, as a partner, he is bound by their acts.

It is the opinion of the court that no unprofessional or unethical conduct on the part of this respondent has been proven.

In view of all of the foregoing the court enters the following

### Decree

And now, to wit, April 15, 1935, upon consideration of the rule entered by the court and after hearing thereon, it is ordered that the rule be discharged.